IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03570-REB-KLM
    Consolidated with Civil Action No. 20-cv-01157-REB-KLM

MATTHEW CLEM, and
JASON MOORE,

    Plaintiffs,

v.

RAYMOND SCHULTZ, an individual,
HINZ TRUCKING, INC.,
ROGER C. ANDERSON, an individual, and
RJA TRUCKING, LLC,

    Defendants.
_____

**ORDER**
_____

    This matter is before the Court on a discovery issued raised by the parties in the above case. In accordance with my discovery procedures, Defendant Hinz Trucking, Inc. ("Hinz") orally moved for a Protective Order regarding several topics listed in Plaintiff's Rule 30(b)(6) deposition notice of the Defendant (the "Motion"). The Court heard argument on the Motion on November 9, 2020 and directed the parties to provide further briefing. *Courtroom Minutes* [#82][1] at 2; s*ee Plaintiff Jason Moore's Memorandum of Law Regarding Notice of 30(b)(6) Deposition of Defendant Hinz Trucking, Inc.* ("Plaintiff Moore's Brief") [#83]; *Defendant Hinz Trucking, Inc. and Raymond Schultz's Brief Regarding Fed. R. Civ.*

---

[1] "[#82]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

1

*P. 30(b)(6) Discovery Dispute* ("Defendant Hinz's Brief") [#84].[2] For the reasons stated below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## I. Background

This case is about a motor vehicle accident in which a tractor-trailer owned by Hinz and driven by Defendant Raymond L. Schultz ("Schultz") rear-ended a pick-up truck in which Plaintiff, Jason Moore, was a passenger. *Plaintiff's Brief* [#83] at 1. Plaintiff brought claims for negligence and negligence per se against Defendant Schultz, and a claim for respondeat superior against Hinz. *Complaint* [#1] at 8-13. Hinz admits vicarious liability for any negligence of Schultz, "who was acting in the course and scope of his employment at the time of the motor vehicle accident from which Plaintiffs' claims arose." *Defendant's Brief* [#84] at 1.

Plaintiff Moore sought to take the Rule 30(b)(6) deposition of Hinz, which then objected to deposition topic numbers 1, 4, 5, 6, 9, 11a, 11b, 11c, 11d and 11k on the grounds of relevance. Defendant Hinz contends that the information sought by Plaintiff in those topics has no bearing on the sole disputed claims of negligence and negligence per se against Defendant Schultz. *Defendant's Brief* [#84] at 1-10. Plaintiff asserts that the information sought in the topics at issue is relevant to "the existence of a duty of care and whether it was breached," as well as "the question of foreseeability" of the accident. Plaintiff also asserts that the information sought may be relevant to whether spoliation of evidence occurred after the crash and "may also be relevant to the question of whether

---

[2] The issuance of this Order was delayed in part because the Court allowed briefing on the same issue in another case, *Collins v. Westin DIA Operator*, 20-cv-1088-WJM-KLM. A hearing was held in that case on December 23, 2020 and briefing was completed on January 4, 2021. The case was subsequently dismissed.

Defendant Schultz's conduct was attended by circumstances of fraud, malice, or willful and wanton conduct," so as to entitle Plaintiff to punitive damages. *Plaintiff's Brief* [#83] at 5-8.

## II. Analysis

### A. *Ferrer v. Okbamicael*

Both parties cite the Colorado Supreme Court's decision in *Ferrer v. Okbamicael,* 390 P.3d 836 (Colo. 2017), to support their arguments regarding relevance of the disputed Rule 30(b)(6) deposition topics. In *Ferrer*, the Court addressed "whether an employer's admission of vicarious liability for an employee's negligence in response to a plaintiff's complaint forecloses a plaintiff's additional, direct negligence claims *against the employer*." 390 P.3d at 839 (emphasis added). The Court answered the question in the affirmative, adopting a rule first articulated by the Missouri Supreme Court in *McHaffie v. Bunch*, 891 S.W.2d 822 (Mo. 1995). According to the *Ferrer* Court, "where an employer has conceded it is subject to respondeat superior liability for its employee's negligence, direct negligence claims against the employer that are nonetheless still tethered to the employee's negligence become redundant and wasteful." 390 P.3d at 844. "'If it is not disputed that the employee's negligence is to be imputed to the employer, there is no need to prove that the employer is liable. Once the principal has admitted its liability under a respondeat superior theory . . . [a] cause of action for negligent entrustment is duplicative and unnecessary. To allow both causes of action to stand would allow a jury to assess or apportion a principal's liability twice.'" *Id.* at 845 (citing *Gant v. L.U. Transp., Inc.*, 770 N.E. 2d 1155, 1160 (Ill. 2002)). As a result of this reasoning, the *Ferrer* Court affirmed the trial court's dismissal of the plaintiff's direct negligence claims against the taxicab company employer, which had admitted that its employee, the taxi driver, was acting in the course

3

and scope of his employment at the time when the accident occurred.  390 P.3d at 848.

Notably, the *Ferrer* majority opinion touches on discovery issues in only a tangential way.  First, the Court noted that the trial court, after adopting the *McHaffie* rule and dismissing the plaintiff's direct negligence claims against the employer, "simultaneously entered a protective order to preclude discovery regarding [the driver's] hiring, supervision, retention and training."  390 P. 3d at 840.  The Court further noted that in the trial court, the plaintiff challenged the court's orders only on the basis that "the *McHaffie* rule is inapplicable in a comparative fault jurisdiction such as Colorado."  *Id.*  Importantly, the Supreme Court also explicitly stated that the plaintiff's petition for relief under C.A.R. 21 did not address the protective order; instead, plaintiff challenged the "trial court's orders granting Defendant's motion for partial judgment on the pleadings and dismissing Ferrer's direct negligence claims against Yellow Cab, denying Ferrer's motion for leave to amend the complaint to add exemplary damages claims, and denying reconsideration of these rulings."  *Id.* at 841.  If the *Ferrer* plaintiff challenged the trial court's *sua sponte* protective order, the Colorado Supreme Court did not say so, nor did it address any such challenge.

As a result, it is not surprising that the Colorado Supreme Court's decision contains no analysis of the propriety of the trial court's entry of the protective order after dismissal of the direct negligence claim against the employer.  Instead, the decision focuses on whether to allow "multiple theories for attaching liability to a single party for the negligence of another," and, as mentioned above, concludes that allowing such multiple theories to proceed "'serves no real purpose,' unnecessarily expends the 'energy and time of courts and litigants,' and risks the introduction of potentially inflammatory, irrelevant evidence into the record.'"  *Id.* at 843.  The Court's reference to the alleged "inflammatory, irrelevant

4

evidence" focuses on "evidence supporting . . . multiple theories [of attaching liability to an employer for the employee's conduct] where such evidence *would serve only to establish that which is already undisputed*: that the employer is liable for the plaintiff's damages caused by the employee's negligent acts." *Id.* at 845 (emphasis added). The Court simply did not consider whether evidence which would serve to establish that which *is* disputed, i.e., whether the *employee* was negligent, is discoverable. The specific evidence discussed in the opinion includes evidence of the employee's driving record and his prior convictions for traffic offenses, but the Court made no mention of evidence relating to employee training or supervision, for example. *Id.* Hence, although *Ferrer* unequivocally adopts the *McHaffie* rule precluding a direct negligence claim against an employer who admits vicarious liability for its employee's negligence, the decision cannot be read to preclude discovery of evidence relevant to the remaining negligence claim against the employee, which is the question before this court.

Second, in the context of addressing whether there should be an exception to the rule announced in *Ferrer* for claims for exemplary damages against the employer, the Court held that "such an exception is not logically consistent with the rule. . . . Because any direct negligence claims against the employer are barred, there can be no freestanding claim against the employer on which to base exemplary damages." 390 P.3d at 848. The Court further noted the "case management conundrum" that would be created by such an exception when an employer admits respondeat superior liability in response to the complaint and moves for judgment on the pleadings on the direct negligence claim against the employer before the plaintiff can seek to amend his complaint to add a claim for exemplary damages. "If a trial court grants the employer's motion for judgment on the

5

pleadings and dismisses the plaintiff's direct negligence claims [against the employer] under the rule we adopt today, it makes no sense to require a trial court nonetheless to permit discovery *on those direct negligence claims* because the plaintiff may later seek to assert exemplary damages." *Id.* (emphasis added). This discussion relates only to allowing discovery when the plaintiff nevertheless tries to assert a punitive damages claim against an employer where his direct negligence claims against the employer have been dismissed. Again, the Court expressed no opinion on the viability of discovery from the employer *as it relates to a plaintiff's remaining negligence claims against the employee.*

**B.     The Parties' Arguments Regarding *Ferrer***

Plaintiff asserts that the *Ferrer* decision "did not herald a sea-change in the law of discovery. Instead, it represented an admittedly significant course correction in the law of vicarious liability." *Plaintiff's Brief* [#83] at 2. Plaintiff states that the *Ferrer* decision acknowledges that "the plaintiff retains the burden of proving that the employee acted negligently," and concludes that "the Colorado Supreme Court did not express an intent to limit the scope of discovery relevant to claims against employees for their own negligent conduct in its opinion in *Ferrer.*" *Id.* at 2-3.

Defendant, on the other hand, argues that because *Ferrer* explicitly bars a negligent training allegation against an employer in light of the employer's admission of vicarious liability for an employee's conduct, discovery about the way the employer conveyed statutory or regulatory requirements to the employee is prohibited, despite the survival of a negligence per se claim against the employee. *Defendant's Brief* [#84] at 6. Defendant further asserts that "the *Ferrer* Court intended to limit the scope of discovery for claims against employers who admit vicarious liability." *Id.* at 7.

> The *Ferrer* Court limited the scope of discovery in trucking cases where the employer admits vicarious liability to prevent wasteful and unnecessary discovery. *Discovery regarding driver history, driver qualifications, personnel files, training, policies and procedures is aimed solely at proving direct negligence claims against an employer.* The *Ferrer* Court dismissed the direct claims and upheld a Protective Order barring discovery on the claims despite a request for punitive damages. The same standard applies to this case.

*Id.* at 8 (emphasis added).

First, as discussed above, this Court disagrees that the *Ferrer* court upheld the propriety of the trial court's *sua sponte* protective order. Second, the Court disagrees that "discovery regarding driver history, driver qualifications, personnel files, training, policies and procedures is aimed solely at proving direct negligence claims against an employer." For the reasons stated below, the Court holds that discovery to obtain evidence aimed at proving negligence claims against the employee is not precluded by *Ferrer*, even when that evidence is sought from the employer. Despite *Ferrer's* conclusion prohibiting negligence claims against an employer which admits respondeat superior liability for its employee's negligence, so long as the information sought in discovery relates to a plaintiff's negligence claim against the employee, it is discoverable. Fed. R. Civ. P. 26(b)(1).

**C.     The Scope of Discovery on a Negligence Claim Against a Driver**

Colorado courts have long recognized that in order to show that a driver was negligent, a party must show that the driver failed "to do an act which a reasonably careful person would do, or [did] an act which a reasonably careful person would not do, under the same or similar circumstances to protect oneself or others from bodily injury." Colorado Jury Instruction 9:6. As noted in the comments to the instruction, "when the parties to a negligence action are part of an industry that conforms to well-established safety practices

7

or customs, those practices or customs may be considered by the jury as non-conclusive evidence of the standard of reasonable care that the defendant should have followed." *Id.* at comment 9.  Moreover, violation of a statute or ordinance constitutes negligence if it caused the claimed injuries.  Colorado Jury Instruction 9:14.

The test for negligence set forth in Colorado Jury Instruction 9:6, as explained in court decisions and other legal authorities, informs the scope of discovery in a motor vehicle accident case.  Because the standard of care involves analysis of the allegedly negligent person's conduct when compared to a reasonable person "under the same or similar circumstances," discovery should encompass information about those circumstances, which may include the actor's individual knowledge, training and experience.  As explained in the Restatement (Second) of Torts:

> When an act is negligent only if done without reasonable care, the care which the actor is required to exercise to avoid being negligent in the doing of an act is that which a reasonable man in his position, *with his information and competence*, would recognize as necessary to prevent the act from creating an unreasonable risk of harm to another.

*Id.* at § 298 (emphasis added).  Moreover, the Restatement (Second) defines "want of competence" as follows:

> An act may be negligent if it is done without the competence which a reasonable man *in the position of the actor* would recognize as necessary to prevent it from creating an unreasonable risk of harm to another.

*Id.* at § 299 (emphasis added).  Most significantly, comment (f) to Section 299 provides:

> If the actor possesses special competence, he must exercise it, not only in his profession, trade or occupation, but also whenever a reasonable man in his position would realize that its exercise is necessary to the reasonable safety of others.  The superior competence, as the result of aptitude developed by special training and experience, may even give to the actor special ability to perceive the existing facts, or special knowledge of other pertinent matters which, separately or together, may enable him to realize the

necessity of using his highly competent technique which a person of lesser competence would not realize.[3]

Here, there is no dispute that Defendant Schultz was engaged in his occupation, driving a commercial vehicle, at the time of the allegedly negligent conduct. There can also be no reasonable dispute that commercial truck drivers possess special competence, as indicated by state licensing requirements, for example.[4] Hence, the Court concludes that information relating to Defendant Schultz's "competence," which includes his "special training," "experience" and "special knowledge," is relevant to Plaintiff's negligence claim against him.

### D.    Plaintiff's Additional Arguments Regarding Relevance

Finally, the Court briefly addresses Plaintiff's contention that the information sought

---

[3] In *S.W. ex rel Wacker v. Towers Boat Club, Inc.*, 318 P.3d 38, 42 (Colo. App. 2012*)*, the Colorado Court of Appeals held that a trespass is required in order for the attractive nuisance doctrine to apply. The *Wacker* plaintiffs cited three authorities: the Restatement (Second) of Torts §§ 299 and 343B and 62 Am. Jur. 2d *Premises Liability* § 299. The decision states: "The sections of the Restatement cited by Plaintiffs do not reflect Colorado law and have not been adopted by Colorado courts, and thus are not binding here." However, the *Wacker* decision does not further address Restatement (Second) of Torts § 299, does not discuss whether the section should be adopted by the Colorado courts, and does not involve or address lack of competence of a negligent actor. Moreover, the Colorado courts have long held that professionals with specialized knowledge or skill are required "to exercise reasonable care in a manner consistent with the knowledge and ability possessed by members of the profession in good standing," a holding which appears to implicitly adopt the reasoning of Restatement (Second) of Torts § 299. *United Blood Servs., a Div. of Blood Sys., Inc. v. Quintana*, 827 P.2d 509, 519 (Colo. 1992) (internal citation and quotation marks omitted). The Court can think of no reason to differentiate between professionals with specialized knowledge or abilities and non-professionals with specialized knowledge or abilities; competence is an issue in determining whether any actor with specialized knowledge or abilities behaved reasonably or not. Thus, the Court finds *Wacker* unpersuasive.

[4] *See, e.g.*, Colo. Rev. Stat. § 42–2–403(1) (stating in part: "The department shall develop, adopt, and administer a procedure for licensing drivers of commercial motor vehicles in accordance with applicable federal law governing commercial motor vehicle safety and any rules promulgated thereunder."); Colo. Rev. Stat. § 42–2–403(2) (stating in part: "Such rules and regulations shall govern all aspects of licensing commercial drivers, including, but not limited to, testing procedures, license issuance procedures, out-of-service regulations, denial procedures, including suspensions, revocations, cancellations and denials, records maintenance, reporting requirements, and cooperation with the commercial driver's license information system.").

in the disputed deposition topics relates to potential spoliation or proof necessary to establish his claim for punitive damages. Plaintiff's argument regarding spoliation is purely speculative and is therefore rejected. Allowing discovery based on the mere potential for spoliation without more would expand discovery beyond the bounds of all reasonableness, an outcome surely not contemplated by Fed. R. Civ. P. 26(b)(1).

Defendants do not address Plaintiff's contention that the information requested could establish the liability of both Defendants for punitive damages by demonstrating whether Schultz acted willfully and wantonly. Plaintiff cites *Fitzgerald v. Edelen*, 623 P.2d. 418 (Colo. App. 1980), for the proposition that Hinz may be liable for punitive damages if it "authorized" Schultz's conduct, if Schultz was unfit for employment, if Schultz was a manager or if Hinz "ratified or approved" his conduct. *Plaintiff's Brief [#83]* at 8. In *Fitzgerald*, the Colorado Court of Appeals adopted section 217C of the Restatement (Second) of Agency, specifically holding that "punitive damages can properly be awarded against a master or other principal because of an act of an agent, but only if the agent was employed in a managerial capacity and was acting in the scope of employment." *Id.* at 423. The Restatement section adopted by the Court further permits awards of punitive damages against an employer if it "authorized" the negligent act of the employee, if the employee was unfit and the employer was reckless in employing him, or if the employer "ratified or approved" the negligent act. *Id.* Discovery designed to elicit information on these topics is therefore relevant to a punitive damages claim against the employer. *See, e.g.*, *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1174 (10th Cir. 1981) (discussing the elements required in Colorado for a principal to be held liable for exemplary damages for the act of an agent) (citing in part Restatement (Second) Agency

§ 217C); *Appel v. Sentry Life Ins. Co.*, 701 P.2d 634, 638 (Colo. App. 1985) (discussing application of § 217C to issue of whether exemplary damages instructions was properly given to jury); *Jacobs v. Commonwealth Highland Theatres, Inc.*, 738 P.2d 6, 12-13 (Colo. App. 1986) (finding that the trial court correctly denied Defendant's request to instruct the jury "that a negligent act or omission of an employee attended by circumstances of a wanton and reckless disregard of plaintiff's rights and feelings is attributable to the corporation only if the corporation authorized or ratified the act or omission," because this was an incorrect statement of the law) (citing in part Restatement (Second) Agency § 217C).

### E.     The Disputed Rule 30(b)(6) Deposition Topics

#### 1.     Topic No. 1

In Topic No. 1, Plaintiff seeks to examine Defendant Hinz about its "use and training regarding the Federal Motor Carrier Safety Regulations [FMCSR] at the time of" the accident, and all information about the regulations which was provided to Defendant Schultz.  Defendant contends that the standards of care for negligence and negligence per se do not derive from the employer's communications to its drivers but rather from the applicable statutes and/or regulations themselves.  The Court is unconvinced.  Evidence regarding Hinz's training of Schultz on the Federal Motor Carrier Safety Regulations helps to prove his competence, which is relevant to Plaintiff's negligence claim against him.  Thus, to the extent that Topic No. 1 seeks general information from Hinz about its "use and training regarding the [FMCSR]," the Motion is **granted**.  However, to the extent that Topic No. 1 is addressed to information and training provided to Defendant Schultz, the Motion

11

is **denied.**

### 2. Topic No. 4

In Topic No. 4, Plaintiff seeks information about "the hiring, retention and/or selection process for any driver of a tractor owned or operated by [Defendant Hinz]." This information is not relevant to a negligence claim against Defendant Schultz, but as explained above, to the extent that Plaintiff seeks information about the hiring and retention of Schultz himself, it properly seeks information that is related to a claim for punitive damages against Hinz. Accordingly, the Motion is **denied** solely as to information about the hiring and retention of Defendant Schultz, and is otherwise **granted**.

### 3. Topic No. 5

In Topic No. 5, Plaintiff seeks information about "the orientation and training" provided by Hinz to all drivers, as well as to Schultz. As set forth above, this information is only relevant to the negligence claim against Schultz to the extent that it informs his level of competence and experience. Hence, the Motion is **granted** to the extent that Topic No. 5 seeks information about training and orientation of any other Hinz employee besides Defendant Schultz (i.e., Topics 5a, 5c). Also, information regarding "the extent to which Hinz Trucking undertook the responsibility to train Schultz in the safe operation of the truck" or "to ensure Schultz was otherwise qualified to perform the safe operation of the truck" is not relevant in light of the admission of respondeat superior liability by Hinz, but Hinz's "actions taken in furtherance of" training Schultz is discoverable information. Hence, the Motion is **denied** as to Topic 5b and the portions of Topics 5d and 5e that relate solely to Hinz's "actions taken in furtherance of" training Schultz to safely operate the truck. It is

otherwise **granted** as to Topics 5d and 5e.

    **4.    Topic No. 6**

Topic No. 6 seeks information regarding "safety measures and safety programs in place for Hinz Trucking regarding its drivers, its tractor trailers and the motoring public at the time of the [accident]." This topic is not specifically addressed to Defendant Schultz, and to the extent that it might be, it is duplicative of Topic No. 5. Accordingly, the Motion is **granted** as to Topic No. 6.

    **5.    Topic No. 9**

Topic No. 9 seeks information about "requirements of Hinz Trucking drivers" regarding compliance with applicable laws and regulations, when performing their job duties and when involved in an accident. This information is only relevant to the extent that it informs Defendant Schultz's competence as a driver. Hence, the Motion is **granted** to the extent that it relates to any driver other than Defendant Schultz, and is otherwise **denied**.

    **6.    Topic No. 11**

The portions of Topic No. 11 which are in dispute (11a, 11b, 11c, 11 d and 11k) seek information regarding Hinz Trucking's relationship with Defendant Schultz, including his hiring date, his employment status, any contracts the company has with him, the hiring criteria used by Hinz to select him, the basis for Hinz's belief that he was qualified to operate a commercial truck, Hinz's orientation and training of Schultz, and Hinz's efforts to audit Schultz's log books and monitor his driving hours for certain time periods. The portion of this Topic which relates to Schultz's status as a manager or employee of Hinz

is relevant to a punitive damages claim, as explained above. The only portion of these disputed topics which arguably informs Schultz's competence as a driver is his orientation and training, which is covered by Topic 5b and addressed above. Accordingly, the Motion is **granted** as to Topics 11b, 11c and 11k and **denied** as to Topics 11a (insofar as it seeks information about Schultz's employment status as a manager or employee of Hinz) and 11d.

### III.  Conclusion

For the reasons set forth above, the Motion is **granted in part** and **denied in part**, as further explained above.

Dated:  April 2, 2021

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge