IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03570-REB-KLM

MATTHEW CLEM,

    Plaintiff,

v.

RAYMOND SHULTZ, an individual,
HINZ TRUCKING, INC.
ROGER C. ANDERSON, an individual, and
RJA TRUCKING, LLC,

    Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion for Leave to Amend the Complaint to Include Exemplary Damages Against Defendant Raymond Schultz** [#102][1] (the "Motion").[2]  Defendant Raymond Schultz ("Schultz") filed a Response [#103] in opposition to the Motion [#102], and Plaintiff filed a Reply [#107].  Pursuant to 28 U.S.C. § 636(b) and D.C.COLO.L.CivR 72.1(c), the Motion [#102] has been referred to the undersigned for a recommendation regarding disposition.  *See* [#109].  The Court has reviewed the Motion [#102], the Response [#103], the Reply [#107], the entire case file,

---

[1]  [#102] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF).  This convention is used throughout this Recommendation.

[2]  Former Plaintiff Jason Moore and all of his claims were dismissed from this lawsuit on April 5, 2022.  *Order* [#126].  Thus, to the extent the present Motion [#102] was originally asserted by Plaintiff Moore, the Motion is moot, and the Court therefore addresses the Motion [#102] to the extent asserted by Plaintiff Matthew Clem.

and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#102] be **DENIED**.

## I.  Background

This matter arises from a motor vehicle collision that occurred on June 4, 2018. *Compl*. [#1] at 8-13.  On December 17, 2019, Plaintiff filed an initial Complaint [#1] in the United States District Court for the District of Colorado.  Plaintiff amended the Complaint [#1] on July 7, 2020, to include claims for relief against three additional parties, *Am. Compl.* [#53] at 14-19, one of whom was later voluntarily dismissed, *Notice* [#69]. Relevant to this Motion [#102], Plaintiff asserts that Defendant Schultz is liable for injuries sustained by Plaintiff under the theories of both negligence and negligence per se.  *Am. Compl.* [#53] at 10-13.  Notably, Defendant Schultz admits negligence for the motor vehicle collision in question.  *Response* [#103] at 2 (citing *Notice* [#85] at 1).

Relying on information obtained through discovery, Plaintiff now seeks leave to amend his complaint to include an exemplary damages claim against Defendant Schultz. *See generally Motion* [#102].  As discussed in more detail below, Plaintiff asserts that he presents "more than prima facie evidence that Defendant Schultz's conduct in causing the collision was willful and wanton" and should therefore be allowed to amend his Amended Complaint [#53] to include an exemplary damages claim.  *Id.* at 6.  In contrast, Defendant Schultz contends that exemplary damages are inappropriate, as Plaintiff is "unable to present any actual evidence of willful and wanton conduct[ ]" by Defendant Schultz.  *Response* [#103] at 3.

## II.  Legal Standard

The Court has discretion to grant a party leave to amend its pleadings. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  Potential prejudice to a defendant is the most important factor in considering whether a plaintiff should be permitted to amend its complaint. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006).  "Courts typically find prejudice only when the [proposed] amendment unfairly affects the defendants in terms of preparing their defense to [claims asserted in the] amendment." Id. (quotation omitted).  The Court may otherwise deny a motion to amend because of "delay, bad faith, undue expense, or other demonstrable prejudice." *Stamp v. Vail Corp.*, 173 P.3d 437, 449 (Colo. 2007).

In diversity cases such as this, a motion to amend a complaint to add an exemplary damages claim is governed by Colorado state law. *Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995).  Under Colorado law, a claim for exemplary damages may not be included in any initial claim for relief, and may only added by amendment to the pleadings "after the exchange of initial disclosures . . . and the plaintiff establishes prima facie proof of a triable issue." Colo. Rev. Stat. § 13–21–102(1.5)(a).  Prima facie proof of a triable issue requires "a showing of reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Stamp*, 173 P.3d at 449 (Colo. 2007) (quoting *Leidholt v. Dist. Court*, 619 P.2d 768, 771 n.3 (Colo. 1980)).  Such proof is established through discovery or evidentiary means. *Id.* at 450.  It is the jury who will decide the merits of an exemplary damages claim. *See id.*; *E & S Liquors, Inc. v. U.S. Fidelity & Guar. Co.*, No. 08-cv-01694-WYD-KLM, 2009 WL 837656, at *2 (D. Colo. Mar. 26, 2009).

At this stage in the litigation, a plaintiff should be granted "some leeway in establishing his prima facie case." *Leidholt*, 619 P.2d at 769.

A claim for exemplary damages under Colorado law is appropriate where the events resulting in a personal injury are "attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13–21–102(1)(a). Willful and wanton conduct is defined as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences of the rights and safety of others, particularly the plaintiff." *Id.* § 13–21–102(1)(b). The Colorado Supreme Court has held that "[w]here the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements" are met. *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005).

### III.  Analysis

Although Plaintiff's Motion [#102] postdates the deadline set forth in the Amended Scheduling Order [#47], the Court considers the Motion [#102] timely, as Plaintiff is restricted under Colorado law from pursuing exemplary damages claims until after the exchange of initial disclosures and Plaintiff's establishment of prima facie proof of a triable issue. Colo. Rev. Stat. § 13–21–102(1.5)(a). In other words, because Plaintiff seeks to amend his complaint with information obtained via discovery, *see Motion* [#102] at 2-4, and was statutorily precluded from including exemplary damage claims in his initial complaint, Colo. Rev. Stat. § 13–21–102(1.5)(a), the Court accepts the Motion [#102] as timely. *See, e.g.*, *Gile v. Schmidt*, No. 16-cv-02498-PAB-NYW, 2018 WL 3056074, at *2 (D. Colo. Jan. 26, 2018) (explaining that Colo. Rev. Stat. § 13–21–102, rather than Fed.

R. Civ. P. 16(b) and 15(a), control whether to permit amendment of a claim for exemplary damages).

Despite the timeliness of Plaintiff's Motion [#102], the Court nevertheless finds that Plaintiff fails to make a prima facie showing of willful and wanton conduct by Defendant Schultz. *See* Colo. Rev. Stat. § 13–21–102(1)(a), (1.5)(a). Plaintiff advances multiple facts as the basis for finding that Defendant Schultz's conduct was willful and wanton: (1) that the semi-truck operated by Defendant Schultz weighed approximately 78,000 pounds; (2) that Defendant Schultz suffered significant hearing loss and removed one of his medically-necessary hearing aids on or around the time of the incident; (3) that Defendant Schultz used his cellphone on or around the time of the incident; (4) that Defendant Schultz saw the vehicle fire, smoke, and a line of parked cars in the right-hand lane from approximately one mile away prior to the collision; (5) that Defendant Schultz knew he could cause catastrophic injuries if he were to rear-end another vehicle; and (6) that Defendant Schultz maintained his cruise control at sixty-five miles per hour at the time of the collision. *See Proposed Second Am. Compl.* [#102-10] ¶¶ 24-27, 31-36, 119-122. According to Plaintiff, these facts support an inference of willful and wanton conduct, as Defendant Schultz "was conscious of both his conduct and the existing conditions and knew or should have known that his actions would cause injuries." *See id.* ¶ 36-37. Thus, Plaintiff contends that he has made a prima facia showing of willful and wanton conduct, and therefore the Court should permit him to amend his complaint to add an exemplary damages claim against Defendant Schultz. *See Motion* [#102] at 6.

In response, Defendant Schultz posits that "Plaintiff's Motion [#102] is based on groundless accusations rather than prima facie evidence[,]" and that Plaintiff, "being

unable to present any actual evidence of willful and wanton conduct . . . instead misrepresent[s] the facts of the accident." *Response* [#103] at 1, 3.  Specifically, Defendant Schultz maintains that "[t]he allegation that [he] decided to intentionally drive into parked vehicles" is unsupported by Defendant Schultz's testimony or any other available evidence. *See id.*  From Defendant Schultz's point of view, the accident resulted from Defendant Schultz's mistaken and admittedly negligent belief that there was a clear lane of traffic in front of him, not from any deliberate misconduct.  *Id.* at 2-3.  Further, Defendant Schultz avers that his alleged actions before the accident are irrelevant and do not substantiate an inference that he consciously decided to drive into parked vehicles. *Id.* at 3.

As Defendant Schultz emphasizes, the Court finds Defendant Schultz's actions prior to the accident—namely, the removal of his hearing aid and cellphone usage—to be immaterial regarding whether Defendant Schultz's conduct was willful and wanton. Defendant's phone records indicate that the last call he took prior to the collision started at 3:56 PM and lasted for six minutes, therefore ending around 4:02 PM.  *Id.* at 4 n.2 (citing *Defs.' Ex. 2* [#103-2] at 2).  Given that the accident occurred at approximately 4:26 PM, this means at least twenty minutes had passed since Defendant Schultz had used his cellphone.  *Id.*  Moreover, although Defendant Schultz removed his left hearing aid and replaced it with a Bluetooth headset while driving, he testified that he turned up the volume on his right hearing aid to compensate so that he could "hear all the way around the truck and anything that's coming in or coming around . . . ."  *See Schultz Dep.* [#103-1] at 30:1-32:7.  Defendant Schultz also testified that "nothing distracted" him prior to impact, which further supports the Court's conclusion that neither his cellphone use nor

his hearing aid removal had any bearing on the accident. *See id.* at 184:21-24. Indeed, Plaintiff cites no authority that suggests the Court should interpret Defendant Schultz's conduct before the collision any differently.

In considering the remainder of Plaintiff's evidence, the Court finds that Plaintiff has failed to adequately establish a prima facie showing of willful and wanton conduct. Specifically, the facts pled by Plaintiff do not reasonably support an inference that Defendant Schultz was "conscious of his conduct and the existing conditions and knew or should have known that injury would result[.]" *Coors*, 112 P.3d at 66. For one, the weight of the semitruck and Defendant Schultz's knowledge that his vehicle could cause injury in the event of an accident do not indicate the presence of willful and wanton conduct. *See Proposed Second Am. Compl.* [#102-10] ¶¶ 19, 34, 120. Understanding, in the abstract, that vehicular accidents involving large commercial vehicles may result in injury does not establish that Defendant Schultz knew or should have known that injury would result from his conduct and the existing conditions present here. Were the Court to decide otherwise, such a conclusion would likely be overly broad and may include conduct beyond that contemplated by the statute. *See* Colo. Rev. Stat. § 13–21–102(1)(b).

Further, Plaintiff's proffer that Defendant Schultz saw the vehicle fire, smoke, and a line of cars in the right-hand lane from a mile away and kept his cruise control on at sixty-five miles per hour do not demonstrate that Defendant Schultz was conscious of his conduct and the existing conditions at the time, nor does it evince his knowledge that injury would result. *See Proposed Second Am. Compl.* ¶¶ 24, 31-33, 35-36, 121. Despite seeing the smoke and traffic ahead, Defendant Schultz testified that he mistakenly

believed the vehicle fire responders had "just let the traffic go" and that the left lane was clear at that point in time.  *See Schultz Dep.* [#103-1] at 174:3-176:19.  Once Defendant Schultz realized he had misjudged the situation, he tried, albeit unsuccessfully, to avoid crashing into the other vehicles.  *See id.* at 177:23-25 ("I made a mistake and just not – this ain't the right place to be at the time.  And I was trying to avoid hitting anybody as I can.").  In this way, the collision appears to result from the fact that Defendant Schultz was *not* aware of his conduct or the existing conditions at the time.  Plaintiff fails to explain how Defendant Schultz's apparent misjudgment or inattentiveness is tantamount to "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences of the rights and safety of others, particularly the plaintiff."  Colo. Rev. Stat. § 13–21–102(1)(b).  At most, this evidence supports a reasonable inference of negligence—a conclusion that Defendant Schultz readily admits to.  *Response* [#103] at 2 (citing *Notice* [#85] at 1).

To be sure, Defendant Schultz's admission of negligence does not protect him from an exemplary damages claim.  Rather, Plaintiff points to no authority that Defendant Schultz's conduct in this case rises to the level of willful and wanton conduct.  Although Plaintiff accurately stresses that "[d]etermining whether there is prima facie evidence of willful and wanton conduct is not a one-size-fits-all test[,]" the cases cited by Plaintiff are either distinguishable from or more egregious than the present action.  *Motion* [#102] at 7.  For instance, in *Hoopes v. Vaughn*, No. 09-CV-921, 2011 WL 3645495 (Colo. Dist. Ct. Jan. 3, 2011), the court found that the plaintiff made a prima facie showing of willful and wanton conduct after the defendant testified that: (1) she was not giving her full attention to the road for five to ten seconds; (2) she was distracted because her passenger showed

her his cellphone; and (3) she was interfacing with her radio controls. Here, there is no indication that Defendant Schultz was distracted or otherwise not focused on the road; as iterated above, Defendant Schultz testified that the collision resulted from a mistaken belief that the left lane was clear. *See Schultz Dep.* [#103-1] at 184:21-185:3.

The three other cases cited by Plaintiff in his Motion [#102] are equally inapplicable to the present facts and thus are unpersuasive. *See Hodges v. Ladd*, 352 P.2d 660, 663 (Colo. 1960) (finding the driver's behavior willful and wanton where he admitted feeling drowsy while driving, but "intentionally and willfully" chose to disregard "his premonitory symptom of impending sleep"); *Martin v. People*, 492 P.2d 537, 539 (Colo. 1972) (finding the defendant's conduct willful and wanton where he was driving in the wrong lane for at least three-tenths of a mile prior to automobile collision, and was driving at excessive rates of speed on the wrong side of the double 'no passing' lines, resulting in death of infant passenger in oncoming vehicle); *Rivera v. Katz*, No. 04-CV-198, 2004 WL 5200097 (Colo. Dist. Ct. Nov. 11, 2004) (finding that the plaintiff might have been "able to present evidence that [d]efendant's alleged behavior" of talking on his cellphone at the time of the accident was willful and wanton on a motion for judgment on the pleadings). Again, there is no evidence to suggest that Defendant Schultz was tired or fell asleep, driving over the speed limit or on the wrong side of the road, or using his cellphone at the time of the accident.

The last and most analogous authority cited by Plaintiff in his Reply [#107] is *Wortman v. Reinsbach*, No. 18-cv-02419-MSK-NYW, 2019 WL 7833968 (D. Colo. Oct. 17, 2019), *recommendation adopted*, No. 18-cv-02419-MSK-NYW, 2020 WL 486956 (D. Colo. Jan. 30, 2020). In *Wortman*, a vehicle fire on the highway that generated visible

smoke caused traffic, including the plaintiffs' vehicle, to come to a "dead stop." *Id.* at *3. The defendant, who was driving a tractor trailer at about sixty-five miles per hour, did not see the vehicle fire or the stopped traffic soon enough to prevent a rear-end collision with the plaintiffs, even though both the traffic and the fire were visible from approximately 4,250 feet away. *Id.* Based on those facts, the plaintiffs contended that the defendant "was not paying attention" and that this inattentiveness was deliberate. *Id.* The court rejected this argument, concluding that it only established a reasonable inference of negligence. *Id.* at *4.

Although Plaintiff claims the present action "was not a result of mere negligence and is distinguishable from *Wortman*[,]" he does not effectively or sufficiently explain why *Wortman* is not persuasive here. The facts in *Wortman* are nearly identical to the case here, and Plaintiff offers nothing besides conclusory statements to demonstrate that Defendant Schultz's misjudgment or inattentiveness stretches into culpable conduct beyond that of the driver in *Wortman, i.e.* into the realm of willful and wanton conduct. *Accord id.* ("In the absence of any factual averments, instead of conclusory statements, that [the defendant] was consciously disregarding a substantial risk of harm or acting heedlessly, I find that [the plaintiffs] fail to make a prima facie showing of willful and wanton conduct."); *see also Wortman*, 2020 WL 486956, at *2 ("The [plaintiffs] have alleged nothing that would suggest that [defendant's] behavior was anything more than ordinary carelessness . . . . Inattentiveness, alone, is not willful and wanton conduct.").

In conclusion, the Court finds that Plaintiff does not sufficiently plead facts that establish a prima facie showing of willful and wanton conduct by Defendant Schultz. Accordingly, the Court **recommends** that the Motion [#102] be **denied**.

-10-

## IV. Conclusion

For the reasons set forth above,

IT IS HEREBY **RECOMMENDED** that the Motion [#102] be **DENIED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: April 8, 2022

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge